UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

SEP - 5 2008

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. H-08-576 |
| § | |
| SHIPLEY DO-NUT FLOUR AND § | |
| SUPPLY COMPANY § | |

## PLEA AGREEMENT

The United States of America, by and through Donald J. DeGabrielle, Jr., United States Attorney for Southern District of Texas, and Ryan D. McConnell, Assistant United States Attorney, the defendant, SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY (hereafter "SHIPLEY DO-NUTS"), and the defendant's counsel, Dennis Cain, have entered into the following plea agreement (the "Agreement") pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure:

### The Defendant's Agreement

1. SHIPLEY DO-NUTS agrees to give up the right to be indicted by a grand jury and agrees to plead guilty to Count One of the Information. Count One charges the SHIPLEY DO-NUTS with conspiring to harbor undocumented aliens in violation of 8 U.S.C. § 1324(a). By entering this Agreement, the SHIPLEY DO-NUTS waives any right to have the facts that the law makes essential to the punishment either charged in the Information, proved to a jury, or proven beyond a reasonable doubt.

2. SHIPLEY DO-NUTS agrees to revise its immigration compliance program and ensure that the company has procedures and personnel in place to ensure that the company

complies with the requirements of the federal immigration laws. In the event the Court, in consultation with the United States Attorney's Office and the U.S. Probation Office, determines that the company has failed to meet this requirement, the probationary term shall be extended for a period to be determined by the Court. At a minimum, this program shall require the company to:

    (a)    Resolve discrepancies between social security numbers provided by the company or company employees on I-9 forms to the government and known social security numbers as noted in Social Security Administration Educational Correspondence Letters (or "No Match" letters) within 60 days of receiving the letter.

    (b)    Hold I-9 compliance workshops for all of the company's employees who take part in the hiring of new employees or other administrative functions.

3.    In furtherance of this (or related) prosecution(s) SHIPLEY DO-NUTS shall:

    (a)    truthfully and completely disclose all information with respect to the activities of the company, its present and former officers and employees, and other concerning all matters about which this Office inquires of it,

    (b)    shall cooperate fully with the United States Attorney's Office, the United States Customs and Immigration Services, and any other law enforcement agency designated by this Office;

    (c)    shall, at the United States Attorney's Office's request, use its best efforts promptly to secure the attendance and truthful statements or testimony of any officer, agents, or employees at any meeting or interview or before the grand jury or at any trial or any court proceedings;

(d) shall use its best efforts promptly to provide the United States Attorney's Office, upon request, any document, record, or other tangible evidence relating to matters or conduct about which this Office or any designated law enforcement agency inquiries; and

(e) shall bring to the United States Attorney's Office attention all criminal conduct by or criminal investigations of the company or its respective senior managerial employees that comes to the attention of the company's senior management, as well as any administrative proceeding or civil action brought by any governmental authority that alleges immigration violations by SHIPLEY DO-NUTS.

4. SHIPLEY DO-NUTS agrees that this agreement will be executed by an authorized representative.

## Punishment Range

5. The statutory penalty for the violation of Title 8, United States Code, Sections 1324(a) is a fine of up to $500,000 and a maximum term of probation of up five (5) years.

## Mandatory Special Assessment

6. Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing SHIPLEY DO-NUTS will pay to the Clerk of the United States District Court a special assessment in the amount of $400.00 per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine and Reimbursement

7. SHIPLEY DO-NUTS understands that under the advisory *United States Sentencing Commission Guidelines Manual* (hereafter referred to as "*Sentencing Guidelines*" or

"U.S.S.G."), the Court is permitted to order the company to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release, if any is ordered.

8. SHIPLEY DO-NUTS agrees to make complete financial disclosure prior to sentencing if it is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of the company's sentence, the company shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following its sentencing.

## Waiver of Appeal

9. SHIPLEY DO-NUTS is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The company agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in 18 U.S.C. § 3742. Additionally, SHIPLEY DO-NUTS is aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The company waives the right to contest its conviction or sentence by means of any post-conviction proceeding, including but not limited to proceedings authorized by 28 U.S.C. §§ 1651, 2241, or 2255. In the event the company files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

10. In exchange for this Agreement with the United States, SHIPLEY DO-NUTS waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time-barred on the date

4

that this Agreement is signed, in the event that (a) the company's conviction is later vacated for any reason, (b) the company violates any provision of this Agreement, or (c) the company's plea is later withdrawn.

11. In agreeing to these waivers, SHIPLEY DO-NUTS is aware that a sentence has not yet been determined by the Court. SHIPLEY DO-NUTS is also aware that any estimate of the possible sentencing range under the *Sentencing Guidelines* that it may have received from its counsel, the United States, or the Probation Office is a prediction, not a promise, did not induce its guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the company will receive. SHIPLEY DO-NUTS further understands and agrees that the *Sentencing Guidelines* are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, the company understands that, although the Court must consult the *Sentencing Guidelines* and must take them into account when sentencing him, the Court is bound neither to follow the *Sentencing Guidelines* nor to sentence the defendant within the guideline range calculated by use of the *Sentencing Guidelines*.

12. SHIPLEY DO-NUTS understands and agrees that each and all of its waivers contained in this Agreement are made in exchange for the corresponding concessions and undertakings to which this Agreement binds the United States.

13. SHIPLEY DO-NUTS understands that nothing in this agreement will restrict access by the United States Probation Office or the Court to information and records in the possession of the United States or any of its investigative law enforcement agencies, including State and local law enforcement agencies, as well as information, documents and records

obtained from the company.

### Disclosure of No Match Letter Information

14. Pursuant to Title 26, United States Code, Section 6103(c), SHIPLEY DO-NUTS hereby authorizes agents of the Internal Revenue Service (IRS) to disclose for any purpose Educational Correspondence Letters sent by the Social Security Administration to the company or any related entities (including L&S Management) to the extent the IRS deems that information to be protected by Section 6103 as "return information."

### The United States' Agreements

15. The United States agrees to each of the following:

(a) If SHIPLEY DO-NUTS pleads guilty to Count One of the Information and persists in that plea through sentencing, and if the Court accepts this agreement, the United States will not bring any additional charges nor seek any additional forfeiture against the company or its related entities related to the allegations contained in the Information.

(b) At the time of sentencing, the United States agrees (1) not to oppose the company's anticipated request to the Court and the United States Probation Office that it receive a two level downward adjustment pursuant to U.S.S.G. § 3E1.1(a) should the company accept responsibility as contemplated by the *Sentencing Guidelines*, (2) to move for an additional two level credit as part of the United States Attorney's Office's "Fast Track Program" for immigration cases as contemplated by U.S.S.G. § 5K3.1, and (3) not to oppose the company's anticipated request for sentencing consideration based on implementing a compliance program before sentencing.

(c) If SHIPLEY DO-NUTS pleads guilty to Count One of the Information and persists in that plea through sentencing, and if the Court accepts this Agreement, the United States will move to dismiss its case against SHIPLEY PROPERTIES.

(d) United States agrees to recommend a one year term of probation for SHIPLEY DO-NUTS.

### United States' Non-Waiver of Appeal

16. The United States reserves the right to carry out its responsibilities under the *Sentencing Guidelines*. Specifically, the United States reserves the right:

   (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

   (b) to set forth or dispute sentencing factors or facts material to sentencing;

   (c) to seek resolution of such factors or facts in conference with the defendant's counsel and the Probation Office; and

   (d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and 18 U.S.C.§ 3553(a).

## Sentence Determination

17. SHIPLEY DO-NUTS is aware that the sentence will be imposed by the Court after consideration of the *Sentencing Guidelines*, which are only advisory, as well as the provisions of 18 U.S.C. § 3553(a). The company nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which the company pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable *Sentencing Guidelines*. SHIPLEY DO-NUTS understands and agrees that the parties' positions regarding the application of the *Sentencing Guidelines* do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, the company cannot, for that reason alone, withdraw a guilty plea, and it will remain bound to fulfill all of its obligations under this Agreement.

## Rights at Trial

18.     SHIPLEY DO-NUTS represents to the Court that it is satisfied that its attorney has rendered effective assistance. The company understands that by entering into this Agreement, it surrenders certain rights as provided herein. The company understands that the rights of a defendant include the following:

(a) If the company persisted in a plea of not guilty to the charges, it would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the company, the United States, and the Court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. The defendant would have the opportunity to confront those witnesses and its attorney would be allowed to cross-examine them. In turn, the company could, but would not be required to, present witnesses and other evidence on its own behalf. If the witnesses for the company would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

**Factual Basis for Guilty Plea**

19.     If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the company's guilt:

### A.     BACKGROUND.

SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY, is a corporation that is involved in the supply of baking materials and logistical support to retail stores and to two hundred franchises across Texas, Alabama, Arkansas, Louisiana, Mississippi, and Tennessee. SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY's headquarters in Houston includes a warehouse, two kitchens, storerooms, offices, and employee and management housing. The company was founded in 1936 by Lawrence William Shipley, Sr. His son, Lawrence "Bud"

Shipley, Jr., began running the company in approximately 1978.

SHIPLEY PROPERTIES owns housing that SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY's provided to the undocumented aliens. Both companies are managed by Lawrence W. Shipley, III as President. Shipley III began working for the company in 1992 and became a vice-president in 1996 and was primarily involved with the franchises and customer relations until he took over the company in March 2005. Shipley III took over operations of SHIPLEY DO-NUT FLOUR AND SUPPLY and SHIPLEY PROPERTIES in 2005 after his father Lawrence "Bud" Shipley, Jr. passed away. Lawrence W. Shipley III is also the owner of L & S Management which controls and owns several Shipley Do-Nut stores in the Houston metro area. Before March 2005, Shipley III had very little to do with the day to day operation of Shipley Donuts.

### B. THE CRIMINAL INVESTIGATION.

In January 2008, Immigration and Customs Enforcement (ICE) initiated an investigation into SHIPLEY DO-NUT & FLOUR SUPPLY CO. (hereafter "SHIPLEY DO-NUTS"), for criminal immigration violations after learning about allegations in a federal employment discrimination lawsuit, then pending before Judge Nancy Atlas in the Houston Division of the Southern District of Texas. As part of the investigation, ICE interviewed some of the civil plaintiffs (a majority of which were undocumented aliens) and reviewed civil pleadings including various depositions taken during the civil lawsuit.

#### 1. Information Gathered From Civil Case.

The information developed from this review was that three current and former managers of SHIPLEY DO-NUTS: Jimmy Rivera, Julian Garcia, and Christopher Halsey, were verbally

abusing both the civil plaintiffs and other undocumented aliens working at the company, including calling the workers "wet backs" and to report the undocumented aliens to immigration. ICE also learned that Rivera charged undocumented aliens for "free housing" that the company had provided for the aliens and received massages from workers who worked at the SHIPLEY DO-NUTS plant at 5200 N. Main in Houston, Texas. During a civil deposition in the federal discrimination lawsuit, Shipley III also conceded that company workers performed various tasks at his ranch located an hour outside of Houston on at least a dozen occasions at his direction and under Jimmy Rivera's supervision.

### 2. Information Developed From The Criminal Investigation.

During the course of the investigation, ICE identified twenty-seven SHIPLEY DO-NUTS employees who were undocumented aliens. Hasley and Garcia would provide checks to the undocumented aliens (which the bank—Sterling Bank—would cash using the employee's company identification if they did not have a legal identification).

ICE also learned that Garcia and Rivera were involved not only of the management and supervision of the undocumented aliens, but also the hiring process. On at least one occasion, on November 4, 1998, Rivera provided a false social security number to an alien which was one number off from his own. Other employees who were undocumented aliens stated that they told Rivera and Garcia that they were not authorized to work in the United States when they were hired. On at least one occasion, in December 2007, an undocumented alien with the initials R.C.—who was also a minor—told Garcia that he had fake documents when he was hired and Garcia told him it was not a problem. Letters written on company stationary also indicated that the company was aware that a number of individuals working for the company were illegal

aliens. For instance, a January 1998 letter written on behalf of an undocumented alien with the initials J.F. who was hired four years earlier after the individual provided invalid work authorization documents, stated that the alien had failed to qualify for amnesty from the INS.

None of the managers or supervisors were provided any formal training with respect to properly completing I-9 immigration forms. When ICE agents reviewed I-9 immigration forms that employers are required to complete, they found over 100 serious violations on 96 forms. Current and former SHIPLEY DO-NUTS employees told ICE agents that they obtained fraudulent work authorization documents (including social security cards) from a flea market located in Houston.

### 3. Undocumented Aliens Living in Company Housing.

Approximately twenty-seven undocumented aliens lived at company provided housing located at or near the warehouse on 5200 N. Main street in Houston, Texas 77009. The following company owned or provided housing addresses were used to house undocumented aliens during the course of the conspiracy: 1002 Jerome, 1006 Jerome, 1010 Jerome, 1024 Jerome, 1001 Winston, 1009 Winston, 1017 Winston, 1022 Louise, and 1020 Post. This was confirmed by ICE agents by interviewing undocumented aliens and reviewing files the company kept on the various properties which including housing policies. Also, the company wrote letters to INS indicating undocumented aliens lived at the properties. For instance, in May 2006, Lawrence W. Shipley, III wrote a letter to INS on behalf on an undocumented alien with the initials J.C. which stated that the alien lived at company provided housing.

### 4. No Match Letters.

Agents also found approximately forty-two No-Match letters sent by the Social Security

Administration to the undocumented aliens in the aliens files placing the company on notice that the aliens did not have a valid social security number. ICE interviews confirmed that current and former workers who were undocumented aliens that received these letters while they resided on company property. Additional information obtained by the United States, indicated that similar No-Match letters were sent to the company advising the company of the social security problems with its employees. For instance, a 2006 No-Match letter sent to L&S Management by SSA indicated that approximately 100 social security numbers had been submitted by the company that SSA was unable match with known SSNs.

      C.    **COMPANY'S REMEDIAL MEASURES IMPLEMENTED AFTER SEARCH WARRANT EXECUTED.**

After a federal search warrant was executed in April 2008, SHIPLEY DO-NUTS has taken measures to revise its immigration compliance program and has begun to implement new procedures to prevent future violations of federal immigration law including hiring an outside consultant to advise the company on immigration compliance.

**Breach of Plea Agreement**

20.    If SHIPLEY DO-NUTS fails in any way to fulfill completely all of its obligations under this Agreement, the United States will be released from its obligations hereunder, and the company's plea and sentence will stand. If at any time the company retains, conceals, or disposes of assets in violation of this Agreement, or if the company knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may ask the Court to set aside its guilty plea and reinstate prosecution.

21.    Any information and documents that have been disclosed by the company

whether prior to or subsequent to execution of this Agreement, and all leads derived therefrom, will be used against SHIPLEY DO-NUTS in any prosecution. Additionally, in the event of breach, the United States may use directly or indirectly, in any criminal or civil proceeding, all statements made by SHIPLEY DO-NUTS employees or officers, except to the extent that any employee or officer's individual rights might prohibit such use, including the company's statements made during the proceedings before the Court pursuant to Federal Rule of Criminal Procedure Rule 11.

22. The determination of whether the company has breached this agreement shall be within the discretion of the United States, and in making this determination, the United States will provide the company with an opportunity to present its position to the United States Attorney's Office.

23. SHIPLEY DO-NUTS understands and agrees that the United States shall only be required to prove a breach of this plea agreement by a preponderance of the evidence. The United States' position on whether a violation of the term of probation does not bind the United States Probation Office or the Court.

**Forfeiture**

24. This Agreement is being entered into by the United States on the basis of the company's express representation that it will make a full and complete disclosure of all assets over which it exercises direct or indirect control, or in which it has any financial interest.

25. SHIPLEY DO-NUTS admits that the real property located at 1002 Jerome, 1006 Jerome, 1010 Jerome, 1024 Jerome, 1001 Winston, 1009 Winston, 1017 Winston, 1022 Louise, and 1020 Post was used to harbor illegal aliens and to facilitated the crime to which company is

pleading guilty. SHIPLEY DO-NUTS requests that the United States accept a payment of $1,334,000, for forfeiture, in lieu of forfeiture of the properties. The company understands any agreement to substitute $1,334,000 for forfeiture is conditioned upon the Court's approval. The company understands that the United States will move that the Court substitute $1,334,000 for forfeiture, which both parties agree is the fair market value of the properties listed above.

26. SHIPLEY DO-NUTS agrees that the $1,334,000 will be paid by cashier's check at sentencing payable to the U.S. Department of Treasury.

27. SHIPLEY DO-NUTS agrees to disclose to the United States the source of the money for forfeiture, for approval by the United States. The company's disclosure will be in writing, and the company will warrant good title to the money. SHIPLEY DO-NUTS agrees to take all steps necessary to vest clear title to the money in the United States.

28. The company understands the United States' agreement to accept $1,334,000 in forfeiture, is void if not funded at sentencing, or in the event the money is not finally forfeited to the United States for any reason. SHIPLEY DO-NUTS agrees that should the circumstances stated in this paragraph occur, the properties will be forfeited to the United States, and the company agrees to take all steps necessary to convey clear title of the properties noted above to the United States.

### Complete Agreement

29. This Agreement, consisting of 17 pages constitutes the complete plea agreement between the United States, the company and its counsel. No promises or representations have been made by the United States except as set forth in writing in this Agreement. SHIPLEY DO-NUTS acknowledges that no threats have been made against it and that it is pleading guilty

freely and voluntarily because the company is guilty.

30. This agreement supercedes any prior agreements and any modification of this Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on September 5, 2008.

                                               LAWRENCE W. SHIPLEY, III
                                               President of Shipley Do-Nut Flour and
                                               Supply Company

Subscribed and sworn to before me on September 5th, 2008.

                                               MICHAEL N. MILBY, Clerk
                                               UNITED STATES DISTRICT CLERK

                           By:    Joyce Hancock
                                    Deputy United States District Clerk

APPROVED:

      DONALD J. DeGABRIELLE, JR.
      United States Attorney

By:    
      Ryan D. McConnell
      Assistant United States Attorney

I, Dennis Cain, Esq., have explained to SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY, its right with respect to the pending Information. To my knowledge, the company's decision to enter this agreement is an informed an voluntary one.

Date: 9-5-08

*Dennis Cain*
Dennis Cain, Esq.
MOEN CAIN and OBRIEN
Attorney for Shipley Do-Nut Flour and Supply Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. H 08-576 |
| SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY | § § | |

## ADDENDUM TO PLEA AGREEMENT

I have read this plea agreement and carefully reviewed every part of it with counsel for SHIPLEY DO-NUT FLOUR AND SUPPLY COMPANY (hereafter "SHIPLEY DO-NUTS"). I understand the terms of this plea agreement and voluntarily agree, on behalf of SHIPLEY DO-NUTS to each of the terms. Before signing this plea agreement, I consulted with attorneys for SHIPLEY DO-NUTS. The attorneys fully advised by of SHIPLEY DO-NUTS's rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this plea agreement. No promises or inducements have been made to SHIPLEY DO-NUTS other than those contained in this plea agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this plea agreement on behalf of SHIPLEY DO-NUTS, in any way to enter this plea agreement. SHIPLEY DO-NUTS is satisfied with counsel's representation in advising the company regarding this plea agreement. I certify that I am the President and Owner of SHIPLEY DO-NUTS and I am authorized to execute this agreement on behalf of the company

_____          September 5, 2008
LAWRENCE W. SHIPLEY, III                 Date
President of Shipley Do-Nut
Flour and Supply Company